## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| RGN-COLUMBUS IV, LLC, a Delaware limited liability company[1] | Case No. 20-2011894 (BLS) |
| Debtor. | |

**STIPULATION (I) AUTHORIZING USE OF CASH COLLATERAL AND PROVIDING ADEQUATE PROTECTION AND (II) CONFIRMING ADMINISTRATIVE EXPENSE STATUS FOR FURTHER ADVANCES**

RGN-Columbus IV, LLC, a Delaware limited liability company ("Debtor") and Regus Corporation, a Delaware corporation ("Lender" and, together with the Debtor, the "Parties"), by and through their undersigned counsel, hereby stipulate and agree as follows:

### RECITALS

WHEREAS, the Debtor provides access to private office space, coworking desks, and meeting rooms on flexible terms to business customers at its location in Columbus, Ohio (711 North High Street, Floors 4-6) (the "Columbus IV Center");

WHEREAS, the Debtor entered into a long-term non-residential real property lease for the Columbus IV Center (the "Lease") and entered into short term occupancy agreements with occupants (the "Occupants") for portions of the Columbus IV Center, which are customized as to duration, configuration, services, and amenities;

---

[1] The Debtor in this chapter 11 case is a disregarded entity for tax purposes and does not have Federal Employer Identification Number. The mailing address for the Debtor is 3000 Kellway Drive, Suite 140, Carrollton, Texas 75006.

WHEREAS, the Debtor has entered into a Global Full Service Management Agreement with Regus Management Group, LLC, a Delaware limited liability company ("RMG"), for all services needed to operate the Columbus IV Center (the "Management Agreement");

WHEREAS, in the coming weeks, the Debtors intend to move the Court for authorization to continue to operate under the Management Agreement;

WHEREAS, the Debtor, other borrowers thereunder, and the Lender are parties to that certain Senior Loan and Security Agreement, dated as of August 1, 2013 (as amended, restated, or modified at any time, the "Loan Agreement"); the Debtor executed that certain Joinder Agreement, dated October 31, 2017, pursuant to which the Debtor became party to the Loan Agreement (as amended, restated, or modified at any time, the "Joinder Agreement"); the Loan Agreement, the Joinder Agreement, and the other documents, instruments, and agreements executed in connection therewith or related thereto are collectively referred to herein as the "Loan Documents";

WHEREAS, as of the Petition Date (as defined below), the Debtor was indebted to the Lender under the Loan Documents for certain principal amounts, plus total accrued and unpaid interest and fees, and all other costs, fees and charges (including costs, fees, financial advisor's fees and attorneys' fees) (collectively, and as the same may change from time to time, the "Prepetition Indebtedness");

WHEREAS, pursuant to the Loan Documents, as security for the Prepetition Indebtedness, the Debtor granted the Lender a senior security interest in the Collateral (as defined in the Loan Agreement); the Lender properly perfected its security interests in the Collateral;

WHEREAS, in the ordinary course of business under the Management Agreement, prepetition, among other duties, RMG would bill and collect all amounts owed by Occupants (the "Occupancy Fees").  Occupancy Fees collected by RMG would be booked to the intercompany account for the applicable period along with other intercompany transactions between RMG and the Debtor for the period.  The resulting balance between the Debtor and RMG is then transferred to the Lender at each month-end closing of the books.  As lease payments come due for the Debtor, RMG will fund that Debtor's bank account with the amount that is due and subsequently initiate the lease payment to the landlord on behalf of the Debtor thereby reducing the Debtor's bank balance back to zero.  In periods where Occupancy Fees for the Debtor exceed lease payments and other costs funded by RMG in the period it would result in a receivable due from the Lender to the Debtor (or be netted against any pre-existing balance between those parties) (such excess amount, the "Surplus Fees").  In periods where Occupancy Fees are less than the lease payments and other costs funded by RMG it would result in payable due from the Debtor to the Lender (or be netted against any pre-existing balance between those parties);

WHEREAS, on July 30, 2020 (the "Petition Date"), the Debtor filed a voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 1181-1195; the Debtor is authorized to continue to operate its business and manage its property as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code; as of the date hereof, no request for appointment of an official committee of unsecured creditors, chapter 11 trustee, or examiner has been made;

WHEREAS, Rent (as such term is defined in the Lease) in the amount of approximately $125,893.95, plus a late fee in the amount of $6,294.70 and interest in the amount of $41.39

(the "August Rent") came due under the Lease after the Petition Date and is presently payable pursuant to section 365(d)(3) of the Bankruptcy Code;

WHEREAS, as of the date of this Stipulation, it is not yet known whether the Debtor has any available cash or is owed any Occupancy Fees from RGM that may be used to pay the August Rent;

NOW, THEREFORE, to facilitate the Debtor's payment of the August Rent in compliance with its obligations under section 365(d)(3) of the Bankruptcy Code, the Parties agree as follows:

**AGREEMENT**

1. Acknowledgment of Prepetition Indebtedness and Priority. The Debtor acknowledges that (i) the Prepetition Indebtedness is absolutely and unconditionally due and payable, without defense, offset or counterclaim, and the Debtor waives any right to object to the allowance of the claims of the Lender in the Chapter 11 Case, (ii) the Lender has valid, binding first priority perfected liens and security interests in the Collateral, and (iii) such liens are not subject to defense, counterclaim, offset of any kind or subordination and are otherwise unavoidable. The Parties shall confer in good faith upon the amount of the Prepetition Indebtedness and stipulate to the same in connection with the motion for approval of debtor-in-possession financing anticipated to be filed by the Debtor (the "DIP Financing Motion").

2. Use of Cash Collateral; Further Advance by Lender. The Debtor acknowledges that all cash in the possession of the Debtor, if any, or proceeds generated by the Collateral, whether before or after the Petition Date, is the Lender's cash collateral (as such term is defined by 11 U.S.C. § 363(a), the "**Cash Collateral**"). Subject to the terms of this Stipulation, the Lender agrees that the Debtor may use only a sufficient amount of the Cash Collateral, in the

ordinary course of its business, to pay the August Rent and for no other purpose in an aggregate amount not to exceed $132,500.00. To the extent there is insufficient Cash Collateral to pay the August Rent, the Lender agrees to advance an amount sufficient for the Debtor to pay the August Rent (such amount, if any, the "Further Advance"), which the Debtor agrees shall constitute an advance of unsecured credit in the ordinary course of business pursuant to section 364(a) of the Bankruptcy Code, which shall constitute unsecured debt allowable, and in fact allowed, under section 503(b)(1) of the Bankruptcy Code as an administrative expense in the Chapter 11 Case.

3. As adequate protection of the Lender's interests in the Collateral and the Cash Collateral, the Debtor agrees as follows:

   a. In the DIP Financing Motion, the Debtor will seek, among other things, to make its stipulations with respect to the amount, validity, priority, and perfection of the Prepetition Indebtedness and the Lender's security interests in the Collateral, as applicable, binding upon all estate and non-estate parties, subject to the minimum challenge periods prescribed by the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

   b. The Debtor shall not sell, assign, encumber or transfer any Collateral without the prior written consent of the Lender or order of the Bankruptcy Court.

   c. In the DIP Financing Motion, among other things, the Debtor will seek, to the extent of any Cash Collateral used since the Petition Date, to grant the Lender replacement liens on, and security interests in, all assets of the Debtors wherever located, which liens and security interests shall have the same dignity, priority, and effect as the liens and security interests held by the Lender prior to the

>    Petition Date and shall be first-priority security interests in and liens on all such assets.
>
> d. In the DIP Financing Motion, the Debtor will, among other things, seek allowance of a superpriority claim in this Chapter 11 Case to the maximum extent allowed by section 507(b) of the Bankruptcy Code.
>
> e. The Debtor shall comply with the reporting requirements set forth in the Loan Documents, provide the Lender with copies of all pleadings and reports filed with the Bankruptcy Court or the United States Trustee, and any other financial reports or projections that the Lender, or its consultants, financial advisors or agents, may reasonably request from time to time.  The Debtor agrees to cooperate with the Lender's officers, employees, agents and financial advisors by allowing such parties to make reasonable inspections of all books and records related to the Collateral and the Debtor's business.
>
> f. The Debtor will not open any deposit or other accounts into which any of the Cash Collateral will be deposited without the express written consent of the Lender or order of the Bankruptcy Court.
>
> g. Subject to any applicable limitations imposed by the Bankruptcy Code, Bankruptcy Rules, or Local Rules, the Debtor agrees to comply with and perform its obligations under the Loan Documents on a timely and current basis.

4. <u>Administrative Expense Claim</u>.  The Lender shall not be required to file an application for repayment of any Further Advance in order to be entitled to payment of the same as an administrative expense in the Chapter 11 Case.  The Debtor further agrees that any such

6

administrative expense claim shall be paid within five (5) business days of the Court's approval of any debtor-in-possession facility.

5. <u>Reservation of Rights</u>.  The Lender reserves and retains all rights it may have as to any claim, and against any Collateral and against any third parties, including any guarantors of the Prepetition Indebtedness.  The Lender reserves its rights to seek relief from the automatic stay, to seek dismissal or conversion of this Chapter 11 Case, and to take such other steps as the Lender may deem appropriate in the Chapter 11 Case.  Nothing in this Stipulation is intended to, nor shall it, limit or bind the Lender in any negotiations regarding any financing, including proposed debtor-in-possession financing.

6. <u>Modification of Agreement</u>.  This Stipulation sets forth the complete agreement of the parties and may not be modified, waived or changed, except by a writing signed by all Parties hereto.

7. <u>Binding Effect of Stipulation</u>.  This Stipulation is binding upon the Parties and their respective successors and assigns, including any successor entity under any plan of reorganization.  Any successor trustee in this Chapter 11 Case or any converted Chapter 7 case shall be bound by this Stipulation.

8. <u>Counterparts</u>.  This Stipulation may be executed in one or more counterparts each of which shall be deemed an original, but all of which together shall constitute one and the same agreement.

9. <u>Right to Credit Bid</u>.   Nothing set forth herein shall impair any right of the Lender to credit bid obligations arising under the Loan Documents, in whole or in part, in connection with any sale or disposition of assets in the Chapter 11 Case (including in connection

with a plan of reorganization for which confirmation is sought under section 1129(b)(2)(A)(i) of the Bankruptcy Code).

| | |
|---|---|
| Dated: Wilmington, Delaware<br>August 7, 2020 | */s/ Patrick A. Jackson*<br>Patrick A. Jackson (Del. Bar No. 4976)<br>**FAEGRE DRINKER BIDDLE & REATH LLP**<br>222 Delaware Avenue, Suite 1410<br>Wilmington, DE 19801<br>Tel.: (302) 467-4200<br>Fax: (302) 467-4201<br>Patrick.Jackson@faegredrinker.com<br><br>*Proposed Counsel to the Debtors*<br>*and Debtors in Possession* |
| Dated: Wilmington, Delaware<br>August 7, 2020 | */s/ Joseph M. Barry*<br>Joseph M. Barry (Del. Bar No. 4221)<br>**YOUNG CONAWAY STARGATT & TAYLOR, LLP**<br>1000 North King Street<br>Wilmington, DE 19801<br>Tel.: (302) 571-6600<br>Fax: (302) 571-1253<br>jbarry@ycst.com<br><br>*Counsel to Regus Corporation* |