IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT DELAWARE

| | |
|---|---|
| In re:<br><br>RGN-COLUMBUS IV, LLC, *et al.*[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-11894 (BLS)<br>(Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND
FINAL ORDERS (I) AUTHORIZING THE PAYMENT OF CERTAIN
TAXES AND (II) GRANTING RELATED RELIEF**[2]

RGN-Columbus IV, LLC ("Columbus IV"), RGN-Chapel Hill II, LLC ("Chapel Hill II"), RGN-Chicago XVI, LLC ("Chicago XVI"), and RGN-Fort Lauderdale III, LLC ("Fort Lauderdale III"), the debtors and debtors in possession in the above-captioned chapter 11 proceedings (collectively, the "Debtors"), hereby move (the "Motion") for entry of an order pursuant to sections 105(a), 363(b), 507(a)(8), 541, 1107(a), and 1108 of title 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), requesting entry of an interim order (the "Proposed Interim Order") and final order (the "Proposed Final Order"), substantively in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, (i) authorizing, but not directing, the Debtors to

---

[1] The Debtors in these chapter 11 cases are RGN-Columbus IV, LLC, RGN-Chapel Hill II, LLC, and RGN-Chicago XVI, LLC, and RGN-Fort Lauderdale III, LLC.  Each are disregarded entities for tax purposes and do not have Federal Employer Identification Numbers.  The mailing address for the Debtors is 3000 Kellway Drive, Suite 140, Carrollton, Texas 75006 (Attn: James S. Feltman, Responsible Officer).

[2] The documents referenced herein are available free of charge by request to Debtors' proposed counsel (Rokeysha Ramos, paralegal, at rokeysha.ramos@faegredrinker.com).

remit and pay (or use tax credits to offset) the Taxes (as defined herein) and (ii) granting related relief.  In support of this Motion, the Debtors rely upon the *Declaration of James S. Feltman in Support of Chapter 11 Petitions and First-Day Relief* (the "First-Day Declaration"), which was filed concurrently herewith.  In further support of this Motion, the Debtors respectfully represent as follows:

## JURISDICTION; VENUE

1. The Court has jurisdiction over these chapter 11 cases and this Motion under 28 U.S.C. §§ 1334(b) and 157, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  The Motion is a core proceeding under 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.[3]

2. Venue of these chapter 11 cases and this Motion is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

3. The statutory and procedural predicates for the relief requested herein are sections 105(a), 363(b), 507(a)(8), 541, 1107(a), and 1108 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rule 9013-1.

## GENERAL BACKGROUND

4. The Debtors are direct or indirect subsidiaries of Regus Corporation, a Delaware corporation, that, together with its affiliates (collectively, "Regus" or the "Company"), offer a network of on-demand office and co-working spaces, and ancillary services and support, to a

---

[3] The Debtors consent to entry of a final order by this Court if it is determined that the Court, absent consent of the parties, cannot enter a final order consistent with Article III of the United States Constitution.

variety of clients across a host of industries in over 1,000 locations in the United States and Canada.

5.  Regus' business model begins with entry into long-term non-residential real property leases that provide the Company unoccupied office space (the "Centers"). Based on significant market research on potential client needs in local markets and the unique requirements of their existing clients, Regus engineers each of the Centers to meet the architectural style, service, space, and amenity needs of those individuals, companies, and organizations who will contract for use of subportions of the Centers. Regus markets its Centers under an umbrella of different brand names, each tailored to appeal to different types of clients and those clients' specialized needs. These clients (the "Occupants") enter into short-term licenses (each, an "Occupancy Agreement") to use portions of the Centers, which are customizable as to duration, configuration, services, and amenities. When operating successfully, a Center's Occupants' license payments ("Occupancy Fees") will exceed the combined cost of the underlying long-term lease, management cost, and operating expenses of the Center.

6.  With few exceptions, Regus is structured such that the lessee on each long-term non-residential real property lease (each, a "Lease") is a special-purpose entity formed for this specific purpose (each, a "Lease Holder"). Each Lease is therefore a contract between the Lease Holder and the property owner ("Landlord"), and in certain cases the Lease Holder's obligations under the Lease are also partially or fully guaranteed by another Regus entity. Each of the Debtors is a special-purpose entity that serves as a Lease Holder within this structure.

7.  Each of the Debtors are special purpose entities that serve as Lease Holders.

8. On July 30, August 2, August 3, and August 8 of this year, Columbus IV, Chapel Hill II, Chicago XVI, and Fort Lauderdale III, respectively, commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.

9. The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to section 1182(2) and 1184 of the Bankruptcy Code. As of the date hereof, no request for appointment of an official committee of unsecured creditors, a chapter 11 trustee, or an examiner has been made.

10. On July 31, 2020, the U.S. Trustee appointed Natasha Songonuga to serve as the trustee under section 1183(a) of the Bankruptcy Code (the "Subchapter V Trustee") for Columbus IV and, on August 10, 2020, the U.S. Trustee appointed Ms. Songonuga as the Subchapter V Trustee for Chapel Hill II and Chicago XVI.[4]

11. Additional information regarding the Debtors' history and business operations, their capital structure, and the events leading up to the commencement of these chapter 11 cases is set forth in the First-Day Declaration.

## RELEVANT BACKGROUND

**A. Role of Regus Management Group, LLC and Payment of Taxes**

12. Each of the Debtors, as a Lease Holder, has entered into a Global Full Service Management Agreement with Regus Management Group, LLC, a Delaware limited liability company ("RMG"), for services needed to operate their Centers (each, a "Management Agreement"). The Debtors are moving for the continuation of the Management Agreement with certain modifications as set forth in the *Debtors' Motion for Interim and Final Orders*

---

[4] Although Ms. Songonuga has not yet been officially designated as Subchapter V Trustee in all of the Debtors' chapter 11 cases, the Debtors anticipate that she will similarly be designated for this role in any other Debtors' cases prior to or after the Debtors move for joint administration of the chapter 11 cases.

*Authorizing Continued Performance Under Intercompany Agreements*, filed contemporaneously herewith (the "Intercompany Agreements Continuation Motion").

13.  RGM provides certain services to the Debtors under their Management Agreements, which are specified more fully in the Intercompany Agreements Continuation Motion and as implemented by the parties in their course of conduct. Specific to the relief requested by this Motion, RMG performs the role of preparing and filing, in RMG's name, all sales and use tax returns, personal property tax returns and other like tax returns and, also in RMG's name, obtaining business licenses and similar government licenses necessary to run the Center.

**B.    The Taxes**

14.  In the ordinary course of their operations, the Debtors incur certain property taxes and various state, local, sales, and excise taxes (collectively, the "Taxes"). In most cases, RMG remits the Taxes to various federal, state, and local governmental units, including taxing, licensing, and regulatory authorities (collectively, the "Governmental Authorities") on behalf of the Debtors pursuant to the Management Agreements. A schedule identifying the Governmental Authorities is attached hereto as **Exhibit C** (the "Governmental Authorities Schedule").[5]

15.  State and local laws in the jurisdictions where the Debtors operate generally grant Governmental Authorities the power to levy property taxes against the Debtors' real and personal property ("Property Taxes"). To avoid the imposition of statutory liens on the Debtors' real and personal property, RMG typically pays Property Taxes on the Debtors' behalves in the

---

[5] The Debtors have made an extensive and good-faith effort to identify on **Exhibit C** any Governmental Authorities to which they owe any amounts as of the Petition Date. However, the Debtors may have inadvertently omitted one or more Governmental Authorities. By this Motion, the Debtors request relief applicable to all Governmental Authorities, regardless of whether such Governmental Authority is specifically identified on **Exhibit C**.

ordinary course as such taxes are invoiced. In some cases, the Landlords remit the Property Taxes to the Governmental Authorities in the ordinary course and are thereafter reimbursed by the Debtors. In 2019, RMG or the Landlords paid approximately $142,673 in Property Taxes on behalf of the Debtors. The Debtors continue to accrue Property Taxes, some of which will become due and owing during the interim period.

16.     The Debtors incur various state, local, sales, and excise taxes in connection with their operations (the "Local Taxes"). RMG pays the Local Taxes on the Debtors' behalves in the ordinary course as such taxes are invoiced. In 2019, RMG paid approximately $93,002 in Local Taxes on behalf of the Debtors. The Debtors continue to accrue Local Taxes, some of which will become due and owing during the interim period.

17.     Although the Debtors have proposed no difference in RMG's performance of its duties under the Management Agreement related to the payment of taxes, the Debtors are requesting authority to make such payments in the event any of the Governmental Authorities are not paid. Should a non-payment event occur, the Debtors are seeking authority, on an interim and final basis, to pay up to the amounts set forth in the attached Schedule 1.

18.     Any failure by the Debtors to pay the Taxes could materially disrupt the Debtors' operations in several ways, including the following: (a) the Governmental Authorities may initiate audits of the Debtors, which would unnecessarily divert the Debtors' attention from the reorganization process; (b) certain Governmental Authorities may attempt to pursue remedies that will harm the Debtors' estates; and (c) in certain instances, the Debtors' directors and officers could be subject to claims of personal liability, which would likely distract those key individuals from their duties related to the Debtors' restructuring. Moreover, Taxes not paid on the due date as required by law may result in fines and penalties, the accrual of interest, or both.

Lastly, the Debtors collect and hold certain outstanding tax liabilities in trust for the benefit of the applicable Governmental Authorities, and these funds may not constitute property of the Debtors' estates.

## RELIEF REQUESTED

19. The Debtors have requested certain accommodations in the Intercompany Agreements Continuation Motion to add clarity to the accounting relationship between the Debtors and RMG; however, the Debtors have proposed no difference in RMG's performance of its duties under the Management Agreement related to the payment of taxes. As such, those parties that usually are the beneficiaries of the relief sought by this type of motion in other Chapter 11 cases likely should not need this relief in the Debtors' cases.

20. However, out of an abundance of caution, the Debtors, by this Motion, seek entry of the Proposed Orders (i) authorizing, but not directing, the Debtors to remit and pay (or use tax credits to offset) the Taxes and (ii) granting related relief, including scheduling a final hearing to consider approval of the requested relief on a final basis.

## BASIS FOR RELIEF REQUESTED

**A.    Payment of Prepetition Taxes Is Necessary and Appropriate.**

21. Any failure to pay the Taxes could materially disrupt the Debtors' operations in several ways: (a) the Governmental Authorities may initiate audits of the Debtors, which would unnecessarily divert the Debtors' attention from the restructuring process; (b) the Governmental Authorities may attempt to suspend the Debtors' operations, file liens, seek to lift the automatic stay, and pursue other remedies that will harm the estates; and (c) certain of the Debtors' board members and officers could potentially be subject to claims of personal liability. In addition, the Debtors collect and hold certain outstanding tax liabilities in trust for the benefit of the applicable Governmental Authorities, and these funds may not constitute property of the

Debtors' estates. Moreover, unpaid Taxes may result in penalties, the accrual of interest, or both, all to the detriment of the Debtors, their creditors, and other stakeholders.

**B.      Certain of the Taxes May Not Be Property of the Debtors' Estates.**

22.     Section 541(d) of the Bankruptcy Code provides, in pertinent part, that "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtors' legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." 11 U.S.C. § 541(d); see also 26 U.S.C. § 7501 (providing that certain taxes and fees are held in trust). If the Debtors have collected or hold Taxes in trust for payment to the Governmental Authorities, such funds do not constitute property of the Debtors' estates. See, e.g., Begier v. IRS, 496 U.S. 53, 60–62 (1990) (holding that funds to be transferred in payment of taxes are not property of the debtor's estate, but rather are held in trust for the government); Shank v. Wash. State Dep't of Revenue (In re Shank), 792 F.2d 829, 833 (9th Cir. 1986) (sales tax required by state law to be collected by sellers from their customers is a "trust fund" tax and not released by bankruptcy discharge); DeChiaro v. N.Y. State Tax Comm'n, 760 F.2d 432, 435–36 (2d Cir. 1985) (same); see also In re Am. Int'l Airways, Inc., 70 B.R. 102, 103 (Bankr. E.D. Pa. 1987) (holding that funds held in trust for federal excise taxes are not property of the debtor's estate). The Debtors, therefore, generally do not have an equitable interest in such funds, and they should be permitted to pay the applicable Taxes to the Governmental Authorities as they become due.[6]

---

[6] For the avoidance of doubt, the Debtors are requesting authority to pay the Taxes as provided herein regardless of whether such Taxes constitute trust fund obligations.

**C.     Payment of the Taxes as Provided Herein Is a Sound Exercise of the Debtors' Business Judgment.**

23.     Section 363 of the Bankruptcy Code provides authority for the Debtors to pay Taxes as and when they come due. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." Under this section, a court may authorize the payment of certain prepetition claims where a debtor "show[s] that a sound business judgment purpose justifies such actions." In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (D. Del. 1999). Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." In re Johns-Manville Corp., 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted); see also In re Tower Air, Inc., 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task[]").

24.     This standard is satisfied here. The Debtors' ability to pay the Taxes is critical to their continued and uninterrupted operations. If certain Taxes remain unpaid, the Governmental Authorities may seek to recover such amounts directly from the Debtors' board members, officers, or employees, thereby distracting such key personnel from the administration of these chapter 11 cases. See, e.g., Schmehl v. Helton, 662 S.E.2d 697, 707 (W. Va. 2008) (noting that corporate officers may be held responsible for payment of certain corporate taxes); In re Am. Motor Club, Inc., 139 B.R. 578, 581–83 (Bankr. E.D.N.Y. 1992) (stating "[i]f the employer fails to pay over the trust fund taxes, the IRS may collect an equivalent amount directly from officers or employees of the employer who are responsible for collecting the tax" and finding director personally liable for unpaid taxes) (citing United States v. Energy Res. Co., 495 U.S. 545, 547

9

(1990)). Any collection action on account of such claims, and any potential ensuing liability, would distract the Debtors and their personnel to the detriment of all parties in interest. The dedicated and active participation of the Debtors' officers and employees is integral to the Debtors' continued operations and essential to the orderly administration and, ultimately, the success of these chapter 11 cases.

25. Finally, the Debtors' liability to pay the Taxes may ultimately result in increased tax liability for the Debtors if interest and penalties accrue on the Taxes claims, which amounts also may be entitled to priority treatment. Such a result would be contrary to the best interests of the Debtors' estates and all stakeholders. As noted above, many of the Taxes may be entitled to priority status pursuant to section 507(a)(8)(C) of the Bankruptcy Code. As priority claims, these obligations must be paid in full before any general unsecured obligations of the Debtors may be satisfied. To the extent that the Debtors are not able to timely pay the prepetition Taxes, they may ultimately be required to pay those amounts with additional interest and penalties. The Debtors' failure to pay the prepetition Taxes as they come due thus may ultimately increase the amount of priority claims held by the Governmental Authorities against the Debtors' estates to the detriment of the Debtors' general unsecured creditors and other stakeholders. Accordingly, the Court should grant the Debtors authority to pay the prepetition Taxes as provided herein.

**D.     Cause Exists to Authorize Applicable Banks and Financial Institutions to Honor Checks and Electronic Fund Transfers.**

26. The Debtors have sufficient funds to pay the amounts described herein in the ordinary course by virtue of expected cash flows from ongoing operations, access to unencumbered cash, and anticipated access to cash collateral. Accordingly, there is minimal risk that checks or wire transfer requests that the Court has not authorized will be inadvertently made. Therefore, the Debtors respectfully request that the Court authorize all applicable financial

institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion. The Debtors also request authority to issue new post-petition checks or effect new automatic clearing house or wire transfers to replace any prepetition checks or funds transfer requests that may be dishonored or rejected as a result of the commencement of the chapter 11 cases with respect to prepetition amounts owed on account of Taxes.

### THE REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED

27. Bankruptcy Rule 6003 empowers the Court to issue an order, within twenty-one days after the Petition Date, granting a motion to "use . . . property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" if such requested relief "is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003(b). For the reasons discussed above, entry of the Proposed Interim Order is integral to the Debtors' ability to successfully transition into chapter 11. Failure to pay the Taxes could disrupt the Debtors' organizational operations, result in the imposition of liens, and may subject the Debtors' officers and executive board to lawsuits or criminal prosecution during the pendency of these chapter 11 cases. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

### RESERVATION OF RIGHTS

28. Nothing contained herein is intended or should be construed as (a) an admission as to the validity or priority of any claim or lien against the Debtors, (b) a waiver of the Debtors' rights to subsequently dispute such claim or lien on any grounds, (c) a promise or requirement to pay any prepetition claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion, the Proposed Interim Order, or the Proposed Final Order,

(e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, or (f) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

## WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h) REQUIREMENTS

29. In addition, by this Motion, the Debtors request a waiver of any notice requirements under Bankruptcy Rule 6004(a) and any stay of the effectiveness of the order(s) approving this Motion. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of fourteen days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As set forth above, the Debtors require immediate relief to continue ordinary organizational operations for the benefit of all parties in interest. Accordingly, the Debtors submit that ample cause exists to justify a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and stay apply.

## NOTICE

30. The Debtors will provide notice of this Motion to: (i) the Office of the United States Trustee; (ii) the Subchapter V Trustee; (iii) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis; (iv) counsel for the Debtors' prepetition secured lender; and (v) those persons who have formally appeared in these chapter 11 cases and requested service pursuant to Bankruptcy Rule 2002.  Notice of this Motion and any order with respect hereto will be served in accordance with Local Rule 9013-1(m).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary under the circumstances.

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Interim Order and Proposed Final Order, substantially in the forms attached hereto, granting the relief requested herein and any further relief as is just and proper.

| | |
|---|---|
| Dated: Wilmington, Delaware<br>August 11, 2020 | **FAEGRE DRINKER BIDDLE & REATH LLP**<br>James F. Conlan (*pro hac vice* to be filed)<br>Mike T. Gustafson (*pro hac vice* to be filed)<br>311 S. Wacker Drive, Suite 4300<br>Chicago, Illinois 60606<br>Tel.: (312) 212-6500<br>Fax: (312) 212-6501<br>James.Conlan@faegredrinker.com<br>Mike.Gustafson@faegredrinker.com<br><br>-and-<br><br>*/s/ Ian J. Bambrick*<br>Patrick A. Jackson (Del. Bar No. 4976)<br>Ian J. Bambrick (Del. Bar No. 5455)<br>222 Delaware Avenue, Suite 1410<br>Wilmington, Delaware 19801<br>Tel.: (302) 467-4200<br>Fax: (302) 467-4201<br>Patrick.Jackson@faegredrinker.com<br>Ian.Bambrick@faegredrinker.com<br><br>-and-<br><br>Jay Jaffe (*pro hac vice* to be filed)<br>600 E. 96th Street, Suite 600<br>Indianapolis, Indiana 46240<br>Tel.: (317) 569-9600<br>Fax: (317) 237-8587<br>Jay.Jaffe@faegredrinker.com<br><br>*Proposed Counsel to the Debtors and Debtors in Possession* |

## Schedule 1

| Legal Entity | Proposed Tax Cap (Monthly) |
| --- | --- |
| RGN – Columbus IV, LLC | $1,000 |
| RGN – Chapel Hill II, LLC | $10,000 |
| RGN – Chicago XVI, LLC | $10,000 |
| RGN-Fort Lauderdale III, LLC | $10,000 |
| **Total Monthly Tax Cap** | **$31,000** |